noon. Happy Monday. So I'm honored to sit today and tomorrow with Judges Wilson and Douglas, then we'll have a handoff on Wednesday and Chief Judge Elrod will occupy the center chair. But today it's the three of us and we've got I think just two on the calendar for today. So we'll kick it off with 25-50049-USV. Pronounce it for me. Filline. Okay. Take it away whenever you're ready. Ms. Kimmelman. Yes, thank you, Your Honor. Okay, welcome. May it please the Court. Counsel Kristen Kimmelman for Christopher Filline. A jury convicted Mr. Filline of one offense, conspiracy to commit wire fraud by defrauding farmers insurance group. Now the government did not prove beyond a reasonable doubt that an agreement to engage in the scheme to defraud actually existed. The essence of the conspiracy that was charged was to defraud the insurance company and an agreement under this court's law is not to lightly be inferred. Now the government presented two possible co-conspirators. One, Oscar Hernandez. The evidence showed that he did take the car and burn it and he, according to Reimers' testimony, agreed to do so because Chief Filline wanted help getting rid of the car. We don't know anything else about what purpose Hernandez thought the burning or getting rid of the car served. There's no evidence that Hernandez knew about any insurance coverage for the car or any other possible purpose. Now the other co-conspirator who did testify is Ambrose Reimers and he was a government witness, but even though he testified at length, he never established that he knew that the purpose of this agreement was to commit wire fraud. So does it make a difference whether or not the knowledge goes to any sort of criminal intent is your argument? I hear it to say that it has to be for a specific crime. Is that correct? And even for conspiracy, the co-conspirators don't actually have to know their actions and the purpose is criminal, unlawful, but they have to agree on that ultimate object and here that ultimate object as charged was to make misrepresentations and part of the scheme to get money from the insurance company. Because at least Reimers did say that he knew that he was committing a crime on cross, correct? Correct. So he admits that something criminal is afoot. He knows he's committing a crime and Mr. Fellin asks Reimers for a cousin who he knows is involved in criminal activities to help in this and also tells Reimers not to tell anybody about it. And so there is this knowledge on Reimers behalf that he testifies to that he's doing some criminal act. But he said he'd kill him if he told anybody about it. That's true. And he also, I mean he worked for Fellin and Fellin often said he was having financial problems and the car cost too much and the repairs cost too much and the financial problems were sort of wide-ranging. Can't the jury make a reasonable inference with the evidence that we have that Reimers at least, if not Hernandez, knew what the object of this was? No, because even though Mr. Fellin did share a lot with his colleagues at the police department, there's no evidence that he told them about this insurance coverage that he had. Well, but insurance versus still owing money on the car and paying the note and the repair bills being expensive. I mean, in other words, did they really have to prove that this was insurance fraud like he was going to submit a false claim under the policy or just that he wanted the car out so he'd get out from under the payments and the other expense? Well, there also was no evidence that others knew about the car payments. Reimers actually testified that he didn't know about the car payments. He knew about other financial troubles, but at ROA 1019, he says he doesn't know about the car payments. And the insurance investigator testifies that he didn't know whether this type of gap insurance that Mr. Fellin had was common at the time of the car. What do we do with evidence that run-of-the-mill, ordinary thieves don't usually burn a vehicle with all the valuable parts still intact? And why doesn't that support the inference that the burning was to accomplish a false narrative rather than to accomplish mere theft? So I guess a couple points. Reimers and Hernandez did not agree to the burning. Reimers testified that the burning was a surprise to him. He thought Hernandez was going to take the car and sell it or take it to a chop shop. So there wasn't agreement as to the burning. Regardless, I think getting rid of the car is perhaps some crime, disposing of property without proper paperwork, getting rid of the car that mostly Mrs. Fellin used without letting Mrs. Fellin know, some sort of criminal action there. But it's unreasonable to then take this step to infer insurance fraud or fraud of any sort, really, because there's no knowledge on the part of Reimers and Hernandez about this coverage that Mr. Fellin, instead of getting a financial benefit by not having to pay for those shocks, because there was a lot of testimony about $2,000 shock repair, Mr. Fellin doesn't want to go through that because he thinks the car is a fraud. So there's lots of testimony about that potential financial benefit to Fellin of not having to fix the shocks for his wife. Your position, obviously your theory is that the evidence shows an agreement at most to get rid of the car and not to commit wire fraud. I guess my question is, separating the destruction from the false report and the claim, why is a jury required to sort of compartmentalize the evidence that way, rather than just view it as one integrated scheme? Because there has to be knowledge on the part of the conspirators about that end result. And I think a good example of that is in Ingram, which is a Supreme Court case cited in the briefs. There was an illegal gambling conspiracy. People were doing bad things. That gambling conspiracy was established. But the Supreme Court said that for two of the defendants there was not conspiracy to evade taxes, because even though as part of the gambling scheme it made sense to conceal the income, they didn't know about the tax liability or that the higher-ups were not paying their taxes. So are you asking us to hold just as a matter of kind of bright line law that jurors can never infer agreement to fraud absent direct proof that the helper knew about the insurance claim specifically? I think it would be hard to make a bright line rule like that, but certainly the case law supports that the conspirators had to know about the ultimate object and purpose. So either, you know, there's a silver bullet and I knew he was going to get money from the insurance company by us getting rid of the vehicle. We don't have that. And so in order to make a reasonable inference from what Reimers testified he did know, then there would actually have to be evidence about the insurance coverage. I don't think it's fair to assume that the car was covered by some policy that would result in Mr. Folling getting a buyout or some sort of payment when the car disappeared. So no bright line rule, but I think Ingram is helpful. I think Falcone and Alvarez, those are also cases where the defendant is either sort of aiding and abetting in some act that helps the conspiracy come to fruition or agrees to help after the fact with the conspiracy. But those defendants were not guilty of conspiracy because there was no evidence that they actually knew about the agreement to commit that unlawful objective. Even in White, one of this court's cases, there was a husband and wife who were involved in individual drug trafficking sales and even discussions with the dealer whether that person was going to work for each the husband and wife individually. And this court said it was not a reasonable inference from those interactions by the mere association of the husband and wife living together to hold that the conspiracy to traffic those drugs was proven. So at what point would, in your view, at what point would circumstantial evidence, mere circumstantial evidence, at what point would that alone be evidence of a coordinated scheme to allow a jury to infer some fraudulent objective? I think if there was evidence that Reimers at least knew that the car being stolen would result in some payout to Filene from the insurance company, that's evidence to infer, oh, he's asking me to get rid of this car so that he can take this next step of filing the tax laws, imposing this liability no one's fulfilling, then it is just speculation. It may be reasonable speculation, but reasonable speculation is still not proof beyond a reasonable doubt. Clear up a record item for me. You'd mentioned earlier that the burning of the vehicle was a surprise to Mr. Filene. What do we make of the fact? I thought the record was that the vehicle was burned after Mr. Filene suggested that exact method in a text to his mechanic, I believe, about getting rid of the vehicle. So he had suggested that in a text with the LOL attached to the text and the mechanic didn't do anything further. So perhaps Mr. Filene had mentioned burning of the get rid of the vehicle and was surprised when it, you know, exploded in front of him. The other conspiracy theory that I think the government mentions, and I discussed some in the briefs, is that concerted action, that if people wouldn't be taking all these steps unless there was an agreement to commit this fraud, and that's in the Ganji case where they're the medical fraud conspiracy was not proven. Here, Reimers and Hernandez, the evidence shows, were simply trying to help Mr. Filene. They almost didn't care about the ultimate purpose of what served by taking away the car. But is it not a little bit different? Because they were not only to help him, they didn't steal or burn the car in a vacuum. They did it within the context of knowing that there were some financial problems that Mr. Filene would have. And I could buy your argument if that context wasn't there, but why isn't just the knowledge that he needed, not just help, not because his wife didn't like the color of the car or what have you, but specifically because he was having financial problems? Why isn't that enough to allow the jury to make an inference? Perhaps they thought getting rid of the car would help him financially, but for a conspiracy to commit wire fraud, there has to be an intent that a misrepresentation will be made to get a monetary benefit. And helping Mr. Filene financially by getting rid of a car that doesn't need to be prepared because the $2,000 shock still serves that purpose of financially helping Mr. Filene, but doesn't necessarily mean that wire fraud is going to be the object of what they're agreeing to do. But the very misrepresentation is that the car was stolen. And it wasn't. He left it, what, in front of the station with the keys in it and all that for, what, two weeks or something like that, and they knew that. And yet when the story came out, it was, oh, it was stolen from my driveway. I didn't realize it was even coming. There's all these inconsistencies that unfolded from there. I mean, again, they knew there was going to be a misrepresentation. I'm not sure how far they have to go to know what the misrepresentation was going to do. Well, they have to know it was for a pecuniary benefit, to take money from someone else, in this case, Farmer's Insurance Group. And because it's wire fraud, they had to at least know it was reasonably. So if Reimers knew that getting rid of the car meant that Filene wouldn't have to make the payments, $14,000 is what I recall, give or take, being owed with it, would that be enough? If that meant he didn't have to, yes, I think that would be enough, but Mr. Reimers didn't know that. But why would, I guess my question is, why would that level of threat, I'm going to kill you if you talk about this, so Filene instructed Reimers, never speak about the destruction of this vehicle, I'll kill you if you do, why would that level of threat, that level of secrecy be necessary if the goal was simply to get rid of the vehicle for a non-fraudulent reason? I don't know why a rational jury couldn't infer from all this evidence, kind of the shared awareness that there was something, there was a fraudulent goal here of some kind afoot. So, I'm sorry, I lost track of the question. Mr. Filene, I can answer on rebuttal. Oh yeah, you're fine if you want to, go ahead. Okay, I'm sorry, can you repeat? Sure, I just wonder, so the evidence said, never speak about it again, I'll kill you if you do. And why wouldn't that sort of pretty grave threat, the seriousness of that kind of life-taking threat, that secrecy, why would that be necessary if the goal was simply, hey help me dispose of this vehicle for a non-fraudulent reason? And couldn't a rational jury infer from all of that ominous talk, a shared awareness of a more serious fraudulent objective? So, I think that goes back to Ingram and Atkinson, which are saying concealment is not enough if there isn't knowledge about this policy that's being violated. But also, we know Mr. Filene from the record has a different sense of humor in how he presents things, and we know that he was trying to avoid Mrs. Filene knowing that he did not want to repair those shocks, and did not want to put more money into this vehicle. Thank you. We'll see you back on rebuttal in a few. Okay, help me with the pronunciation, Ms. Nawaz. Nawaz, apologies. Welcome. Thank you, may it please the court. I am an Assistant United States Attorney, my name is in the light that's most favorable to the prosecution. A rational jury could have found that the official elements of this crime, conspiracy to commit wire fraud, were proven. Contrary to defendant's arguments, there is absolutely sufficient evidence to show that two people agreed to commit wire fraud. The best evidence is that the defendant and Ambrose Every police officer that was working in the Castorville Police Department understood that defendant had financial problems, and there was testimony specifically that the police officers all knew that he owed a lot of money on that Lincoln Navigator. That's at the record at 977. And so that evidence, that everybody knew he owed money on the car, was presented to the jury in this case. And that would include Ambrose Reimers, as he was one of the police officers working in the Castorville Police Department. He admitted his actions were a crime. He admitted that he was engaging in a conspiracy with both Oscar Hernandez and the so close to what a counsel admitted that she would admit would suffice in this case. Counsel on the other side argued that that would just, it could possibly be to relieve him of having to pay for the shots, not necessarily committing wire fraud with the insurance company. I believe that when Judge Wilson asked her directly that if, about, like if Reimers knew about the payments, and she said that yes, that would be sufficient. And so the evidence we have is he knew that he owed payments. I would like to also, counsel did state that in the record at 1019, Reimers said he didn't know about the car payments, but that's not true. If you go to that record side and you look at it, Reimers said he didn't know that the defendant had missed car payments. Not that he was behind on them, that's what he said he wasn't sure about. He knew that the defendant was making the car payments. And again, you can go to the record at 977 to see that. And so we know Reimers knew about the car payments and we know Reimers said he did it to help alleviate the defendant's financial problems. Would this case be different if the vehicle were simply abandoned or junked rather than burned? No. I think that what is important and is that what the defendant claimed to the insurance company was that his vehicle was stolen. If the defendant was abandoned, if the vehicle was abandoned somewhere, it still would have looked like somebody stole it and abandoned it. If it was burned, it would still, because that's the point, right? What Ambrose Reimers and Oscar Hernandez's actions did was line up and corroborate defendant's story to the insurance company. And that was that someone had stolen that vehicle. The fact that what Reimers and Hernandez did literally matches up the theft, the alleged theft, with what he told the insurance company illustrates that the two had an agreement. And in the United States versus Beecham's case, it says you can show proof of a single conspiracy through inferences if you have activities of one part of a scheme that are necessary and advantageous to the success of activities of a different part of the scheme. So that's how you show that the actions come together to form one conspiracy. And I know Judge Willett, you had asked counsel that question. You have what Reimers and Hernandez were doing being advantageous and necessary and beneficial to what defendant Filene ultimately did, which was make the insurance claim. So what is the single best fact? Can you isolate the best record fact that Reimers, not just Filene, but Reimers understood the objective was insurance fraud rather than mere unlawful disposal? I think that the evidence about finances, which I've already discussed, to me is the strongest, but it's not, that's not all there is. There's a couple of other very vital things in the record that I think this court can look at. But you agree it's all inferential. There's no, there's no testimony that Filene ever mentioned insurance, never mentioned money from the insurance company, never mentioned a false theft report to Reimers or Hernandez. Is that correct? There is nothing direct in the record where Reimers is saying yes, the defendant specifically told me that he had farmer's insurance and that he was going to, you know, where somehow the defendant is involving him in the intricacies of, you know, how he was going to commit the insurance fraud. Instead, the defendant told him we are never going to talk about this ever again. You are never to speak of this to me. But you agree it is sort of a, we are kind of piling, it may not be a sky-high pile, but we're piling inference upon inference, right? I disagree, that inferences, the jury did make some inferences in this case. But I think that the inferences they made were merely to piece together two different parts of the conspiracy that were occurring. You have Reimers and Hernandez's actions with the car and working with the defendant. But you say it's enough if Reimers knew simply that Filene was financially strapped, that's sufficient. But it wasn't just that, it was specific to the car. And he wanted the vehicle gone. He wanted the vehicle gone and he was financially strapped, ergo insurance fraud. But it's that the car itself and the payments he was having to make on it were causing him financial problems and that he wanted to alleviate that for the defendant. And the only rational, reasonable explanation of how you get rid of those payments that you have to make every month on a is through the filing of the insurance claim. There's just not another way that taking a car out into a field or burning it, what Reimers did, how else can it help him financially? I did want to point out a couple of other facts in the record that you can turn to to show this agreement between Reimers and the defendant. You have the fact that the conspiracy that was charged was through July of 2016 all the way through December of 2016. You have that the defendant made the insurance claim July 18th, 19th of 2016. Reimers was shortly thereafter and did not make any admissions. He continued on in the conspiracy at that point. The police officers knew what had happened to the defendant's car, knew about the insurance claim, etc. But yet at no time did Reimers withdraw from the conspiracy. Wait, did Reimers know about the insurance claim at the time he denied involvement or knowledge? We don't have direct evidence of that in the record where literally he was asked that question and he said yes or no. But we know that he was interviewed shortly thereafter and he made no admissions whatsoever. That's quite a generalized statement. There's all sorts of things he didn't admit to by making no admissions that have nothing to do with what we're talking about. But is he culpable for all of that also? No, Your Honor. There's additional evidence from the other police officers in the case as to what was being discussed in the small room where eight to ten police officers all sat together. So there is some, it's not direct. Again, that is an inference that one could make. Additionally, in 2018, Oscar Hernandez was interviewed. He had a warrant. He was pulled over on a traffic stop. The defendant came out to the scene, which there was testimony that that was highly unusual. The defendant got in the back of the car with Hernandez and talked to him for some time. And when investigators tried to pull the video of what was the defendant said to Oscar Hernandez during that time, the video had wound up missing. But that's not proof. That's we don't know what they talked about. I think that because the video wound up missing, because it was unusual, he was out there questioning a defendant on a traffic stop that just had to do with a simple warrant. Well, the officer's report came up missing. The video came up missing. Lots of things came up missing. And a report as well. Right. But I mean, Reimer says, I knew what we were doing was criminal. That doesn't mean it's a conspiracy to commit wire fraud. And you're sort of talking about suspicious things that could be inferred to be cover up, which is inferred to be about insurance fraud, which is, I mean, how do you get there? Again, I am merely pointing to additional, not my best evidence, additional evidence in the record because the jury heard all of this. And the jury sat back and considered all of it together. They considered the concert of action and the collection of circumstances. That's from Beecham. And it's by piecing all of this together that the jury, a rational jury, made that decision that the evidence was sufficient to convict. The last thing that I'll point to just with regard to additional facts in the record that can show this is with regard to the set of keys. There was testimony numerous times from numerous people that defendant only had one set of keys to the car. He told that the first thing he did when he spoke to the police and when he spoke to his insurance company was tell them that. He said he had left the keys hanging up on a hook in his house. But of course, there was no evidence at all that his house had been broken into. Then in August 11th, so a few weeks after he made the claim, he had told the insurance company that, yes, of course, he has the keys, but they were in a box because he was moving between houses. The fact that he had the keys means that he got the keys back from Reimers and Hernandez after they did what they did to that vehicle because they had to have the keys. The keys were left in the car so that Reimers and Hernandez could take the car to a different place in order to ultimately burn it. Those keys had to make their way back to the defendant. That again, it shows concert of action. It shows pieces of what Reimers and Hernandez were doing matching up with what the defendant did because the defendant told the insurance company. It was something that the claims adjuster for Farmers sort of fixated on. He found the one set of keys and where the keys were. He found all of that interesting and actually a red flag kind of troubling. I will point out, I think the defendant messed up when he said that because he kind of got stuck. He got stuck that he had to have the keys. So he had to make sure he got the keys back. The only reason that makes any sense on why they would have given him the keys back was to corroborate and to substantiate his insurance claim. It is through all of these things together that the jury was able to rationally conclude that there was proof of an agreement between the defendant and Reimers or defendant Reimers and Hernandez or Reimers and Hernandez. I will point out that the review in this case, the standard of is de novo, but that's been called a misnomer because it's highly deferential to the verdict. And so the question that is being asked is whether the rational jury could find these elements beyond a reasonable doubt. And the jury is free to choose for itself how it gets there. It is free to have a reasonable construction and a reasonable piecing together of different pieces of evidence that it receives in order to make its decision about whether or not those elements are met. I will point to just in the record to the rule 29 motion in this case, I will point out that at that time the defendant made a very general argument stating that the government has failed to meet its burden of proof to show that all of the elements are met. The government likewise made a very broad and sort of standard response that sufficient evidence exists to establish that the elements are met. And the judge specifically stated that the judge trying to consider himself as a rational juror looking at all of the facts in this case and in a light that's most favorable to the prosecution concluded that a rational trier could find that the defendant committed a conspiracy to commit wire fraud. I would point out that the specific argument obviously alleged here on appeal was never mentioned. It was never brought up. It was never pointed out to the judge in that case. For example, that there's no proof of an agreement between the parties to commit a conspiracy to commit wire fraud. And while in this case I am not arguing for a different standard of review or anything like that in this case, I think that it is important to point out because perhaps if that argument had been made, perhaps the judge could have put on the record the specific facts that the judge considered when denying that motion. And that I think that would have helped a bit on appeal to specifically have those facts drawn together. Likewise, it was never an argument that was a part of the defendant's defense at trial in any way, shape, or form. And so the trial court was never allowed an opportunity to sort of address that in any kind of manner there in the court below. Unless your honors have any additional questions, I will sit down now. Okay, thank you very much. Ms. Kimmelman, you're back on rebuttal as you're walking up. So your friend on the other side, she led off with the standard of review. It's a pretty pro-jury standard of review. Not insurmountable, but pretty tough for you to scale. Right. Certainly we need to construe the facts in the light most favorable to the verdict. We did our general sufficiency objection at both ends of the also in a post-verdict motion. In that post-verdict motion, contrary to what counsel said, it was specifically argued. Even in the closing argument, we argued that there was no agreement to commit wire fraud. The judge's ruling on the Rule 29 post-verdict motion says it was sufficient for the government to prove that Reimers knew that he was assisting the defendant financially by disposing of the vehicle, although he may not have known about the details. And so that's how the judge resolved that issue, saying it was enough to know financially. Reimers did say he, you know, knew he was trying to help Falene and that Falene had financial troubles. I don't think he specifically said he was helping him with his finances. He just said he knew about his and felt bad. Why did you feel bad? Because he needed help. That's at 1026. So in help, he needed help in general. And even with the concerted action theory, certainly we've conceded the government has proven an agreement to destroy the car. The question is whether that also is enough to prove the conspiracy to commit wire fraud. Mr. Falene was the chief of police. He was Reimers' friend and boss. Oscar Hernandez was involved in criminal activities. It makes sense for a host of reasons why these individuals would want to help Mr. Falene accomplish an objective he's asked them to do without knowing that the ultimate goal of that objective was indeed wire fraud. I think Falcone is a helpful case with regard to the government's arguments about taking steps that help the conspiracy. And so in Falcone, the Supreme Court says that the people who sold yeast and sugar to the people who were making the illegal alcohol were not guilty of the distillers' conspiracy to illegally distill alcohol because those individual sellers, even if they knew who they were selling to was committing an illegal action, still didn't know about the overall conspiracy of what was being accomplished. And so Supreme Court in Falcone says not enough evidence there. This court in Alvarez says even though Alvarez knew criminal activity was afoot, he goes out to tarmac with a plane that is going to Mexico, loads up appliances onto that plane and says, I'll be here to help unload after the plane goes to Mexico. This court says that's not enough to show that Alvarez knew about the conspiracy to import the marijuana because it has to be more than just simply knowing that criminal stuff is going on. It needs to be that shared common purpose and that shared intent to actually commit the fraud. And that in this case is charged as making misrepresentations to deprive farmers' insurance of money. And to clarify, our argument is that there is no evidence that Reimers or even anyone in that police department knew about the insurance policy. One person, Sergeant Russell I believe it is, is the person who testified as opposing counsel mentioned that there was money owed on the car. Reimers never says that. He says he knows nothing about missed car payments. I don't know if that is enough to assume he knew there were still car payments, but regardless, car payments does not equate to knowing that insurance is going to give Mr. Falene either money back or forgive the lien under this policy that the insurance investigator said he didn't know if it was a common policy or not. And so this is just compounding inference upon inference to build up a conspiracy that simply didn't exist. There was no agreement to commit wire fraud and we would ask this court to vacate Mr. Falene's conviction. Okay, Ms. Kimmelman, thank you very much. Thank you to both sides. Very helpful.